FILED IN MY OFFICE
DISTRICT COURT CLERK
7/14/2016 10:18:38 AM
STEPHEN T. PACHECO
Jorge Montes

FIRST JUDICIAL DISTRICT COURT
COUNTY OF SANTA FE
STATE OF NEW MEXICO

CITY OF SANTA FE
    Petitioner,

v.

ALBERT CATANACH, INFINITE INTERESTS ENT. LLC
    D/B/A CNSP, INC.
    D/B/A NMSURF
    Respondent.

Case assigned to Thomson, David K.

No. D-101-CV-2016-01719

### CITY OF SANTA FE'S VERIFIED PETITION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AND PERMANENT INJUNCTION

Pursuant to Rule 1-066(B) NMRA, Petitioner, the City of Santa Fe, by and through its attorney, Assistant City Attorney Zachary Shandler, hereby moves the Court to enter a temporary restraining order and a preliminary/permanent injunction pending the resolution of this cause. As grounds for this Application, the City states:

1. The City of Santa Fe is a municipality situated in the state of New Mexico.

2. CNSP, Inc. is a telecommunication business owned by Mr. Albert Catanach ("Respondent") and is situated in the municipality of the City of Santa Fe, New Mexico, the address being at 1308 Apache Avenue, Santa Fe, New Mexico, and the acts complained of having occurred there.

3. The Santa Fe County Assessor lists the property owner of 1308 Apache Avenue as Infinite Interests Ent. LLC.

4. Respondent has submitted an application for a building permit to the City and used the terms "CNSP, Inc. c/o Albert Catanach" and "Albert Catanach, Manager Infinite Interests

1

Ent. LLC." Respondent and his lawyer have submitted letters using the term "CNSP, Inc. dba NMSURF."

5. The Judicial Court therefore has jurisdiction over the parties.

### Telecommunication Building Permit Process

6. City Code Section 14-3.11(A)(1) states a building or structure that is regulated by Chapter 14 [of City Code] "shall not be erected, moved, added to or altered…without a construction permit."

7. Telecommunication towers and facilities are regulated by City Code Section 14-6.2(E).

8. The term "construction permit" is another word for "building permit."

9. There are four methods to get a building permit for a telecommunication tower.

10. The first method is when an applicant is proposing to make a non-substantial change to the tower.

11. The Federal Communications Commission has defined a "non-substantial" as a change of no more than twenty feet of additional height or twenty feet of additional width (a/k/a "FCC Section 6409 Rule").

12. A request for a non-substantial change is made by requesting a building permit to the City's Building Permit Division and FCC Section 6409 Rule requires an expedited review schedule.

13. The second method is when there is a substantial change proposed to the tower or when the tower is proposed to be moved less than 50 feet from its original spot in a commercial zoned district under City Code Section 14-6.2(E)(3).

14. This request is reviewed by the City's Current Planning Division (a/k/a "administrative approval") for zoning issues (i.e. property setbacks—distance between property lines) and the City's Building Permit Division.

15. There is not a mandatory expedited review schedule for the "administrative approval" under FCC Section 6409 Rule.

16. The third method is when there is a substantial change proposed to the tower or when the tower is proposed to be moved less than 50 feet from the original spot in a commercial zoned district AND the move does not satisfy the property setback requirements.

17. City Code Section 14-6.2(E)(5)(k) requires a tower to be "set back a distance equal to at least one hundred percent of the height of the tower from any adjoining lot line, measured from the base of the tower."

18. This means if a tower is 80 feet tall, it cannot be placed closer than 80 feet away the adjoining property line (i.e. property setback).

19. This set back requirement helps ensure that if the tower falls, it will not fall on another's property.

20. However, if the tower owner wants to request that the tower to be placed closer to the property line, the tower owner needs to request and receive a "waiver" (a/k/a "variance") of City Code requirements.

21. The Planning Commission under City Code Section 14-6.2(E)(8) has the authority to grant a waiver.

22. This means the third method requires the City's Planning Commission approval for the variance request and the remainder of the request is reviewed by the City's Current

Planning Division for zoning issues ("administrative review") and the City's Building Permit Division.

23. There is not a mandatory expedited review schedule for the third method under FCC Section 6409 Rule.

24. The fourth method is when there is a request for a new tower in a residential zoned district.

25. This request is reviewed solely by the City's Planning Commission under City Code Section 14-6.2(E)(4).

26. There is not a mandatory expedited review schedule for the fourth method under FCC Section 6409 Rule.

### Count I—Building without a Permit.

27. 1308 Apache Avenue is in a commercial zoned district, but it is directly adjacent to a residential zoned neighborhood.

28. There are at least two "towers" on the roof of the building at 1308 Apache Avenue.[1]

29. One tower is an approximately 77 feet high ("tall tower") with several telecommunication antenna/equipment.

30. Another tower is much shorter ("small tower") with an unknown height with several telecommunication antennae/equipment.

31. On April 9, 2015, Respondent wrote a letter to the City.

32. He signed it "Albert Catanach, President/CEO CSNP Inc., dba NMSURF."

33. The letter stated CNSP, Inc. was requesting a building permit because "CNSP wishes to collocate[2] two towers on its building at 1308 Apache Ave, Santa Fe, NM 87505 approximately 30 feet south of the building on to one tower located on the ground."

---

[1] There may be a third "smaller" tower but it is not germane to this TRO request.

4

34. The letter alleges the "tall tower" and "small tower" were "approved by the city respectively in 2005 and 2010."

35. Respondent's proposal was to erect a new eighty (80) foot tower on the ground in his property's backyard. The proposal was then take the antennae/equipment from the "tall tower" and "small tower" and put the equipment on the new tower.

36. The proposal was apparently then to take down the "tall tower" and "small tower" from the roof.

37. The letter opined that the City should review the request under the "first method" because "CNSP is not substantially increasing the tower size and is merely collocating two tower sites to one...."

38. On April 9, 2015, Respondent submitted "Telecommunications Administrative Review Application" to the City.

39. On April 28, 2015, City Current Planning Division staff wrote a letter to Mr. Catanach stating that putting a telecommunication tower in the building's backyard would violate the City's setback requirements.

40. The letter wrote: "The tower setbacks proposed identified setbacks are less than one hundred percent of the tower height."

41. The new 80 foot tower, according to the plans, would only be approximately 16.8 feet from the rear property line.

42. Current Planning Division staff informed Respondent that he needed to pursue the "third method" for obtaining a building permit because "a waiver must be approved by the Planning Commission."

---

[2] The term "collocate" usually refers to having equipment moved from one tower onto another existing tower. It is not usually used to refer to erecting a new tower and placing equipment on the new tower.

43. On May 26, 2015, Respondent's counsel wrote a letter to City Current Planning Division staff arguing the "grandfather protection" for the existing "tall tower" on the roof regarding property setback automatically transferred "grandfather protection" for the new ground tower.

44. The letter stated: "Mr. Catanach already has a setback variance for the existing equipment towers on the roof…it seems that this previously approved variance from the setback requirement automatically extends to the new proposed tower because it is merely a relocation of existing equipment already excused from the setback rules to a location such a short distance away from where it is now that new approval is not required."

45. Respondent opined that the "tall tower" on the roof was 77 feet high, but within 77 feet of the property line, however, the "tall tower" qualified for "grandfather" protection due to its long-standing existence.

46. This means it did not have to comply with the City Code setback requirements.

47. It was considered a "legal non-conforming" telecommunication tower.

48. City Current Planning Division staff did not research the history of the "tall tower" but disagreed with Respondent's position that "grandfathered status" of the "tall tower" could be automatically granted to the new tower in the background.

49. This is because if a telecommunications tower is ever moved, City Code Section 14-10.2(B) states it loses its "grandfather" protection.

50. City Code Section 14-10.2(B) states that that "a legal nonconforming structure shall not be moved in whole or part to any other portion of the land occupied by that use at the time the use became nonconforming."

51. Respondent disagreed with the City's positon that it had to follow the "third method."

52. On September 3, 2015, Respondent wrote an email to Assistant City Attorney Zachary Shandler stating "we recently applied…[and] have some questions regarding the city ordinance and would like to setup a meeting with you."

53. On September 16, 2016, Respondent and Respondent's counsel met with Assistant City Attorney Shandler about Respondent's view that it qualified under the "first method" of review.

54. Assistant City Attorney Shandler, after the meeting, stated he needed to confer further with his supervisor, City Attorney Kelley Brennan, on the issue.

55. On October 9, 2015, Assistant City Attorney Shandler wrote an email to Respondent's counsel stating that City Attorney Brennan disagreed with Respondent's conclusion.

56. The email stated a letter would be issued memorializing this positon.

57. On November 12, 2015, an Assistant City Attorney Shandler wrote a letter to Respondent stating Respondent's request was "substantial" and thus did not qualify under the "first method" of review.

58. The letter also stated that "grandfather protection" did not automatically transfer to new locations.

59. The letter also stated that the Current Planning Division staff was correct that the "third method" was the proper type of review because the "setback issue would have to go to the Planning Commission for a waiver (a/k/a variance) of the property line-to-property line setback requirements."

60. On December 10, 2016, Respondent met with the City's Current Planning Division for a "pre-application meeting" for a building permit.

61. On January 21, 2016, Respondent submitted a new "Telecommunication Facilities Administrative Review" application.

62. The proposal was identical to the first building permit application.

63. It appeared to staff that Respondent had accepted that he was subject to at least the "second method" of review.

64. The City Current Planning Division staff had not changed its position that Respondent needed to go through the administrative review AND the Planning Commission for the waiver request for the setback issue.

65. Starting on the administrative review method did not preclude Respondent from concurrently asking to be on the Planning Commission agenda for the waiver request.

66. During February 2016, Respondent and the City's Current Planning Division staff exchanged emails about setting up a date for an "Early Neighborhood Notification Meeting" as part of the application process.

67. On March 10, 2016, Respondent held an "Early Neighborhood Notification Meeting" with members of the public.

68. One member of the public questioned whether Respondent had ever gotten a building permit for the "tall tower" on the roof.

69. Respondent stated he would research that item for the public.

70. On March 15, 2016, City staff emailed Respondent asking for a status report on the "tall tower" research.

71. Then, on April 28, 2016, Respondent's counsel changed Respondent's position. It wrote a letter to the Assistant City Attorney Shandler stating that the ground tower proposal was a non-substantial change and thus qualified under the "first method" of review.

72. The letter stated since the City had not expedited its review of the initial "April 8th, 2015" application for a building permit—according to Respondent—his building permit was now automatically "GRANTED."  Respondent had essentially granted himself permission to build his proposal.

73. On May 13, 2016, Assistant City Attorney Shandler wrote a letter to Respondent's counsel and stated: "I reject your letter's conclusion that the application has been deemed GRANTED. In my view, your client's proposal is a substantial change; this does not mean your client cannot pursue this plan, it just means he has to go through a certain process."

74. The letter invited Respondent's counsel to meet with his supervisor, City Attorney Brennan, if Respondent's counsel disagreed with the letter's conclusion.

75. Respondent's counsel did not ask for a meeting with City Attorney Brennan.

76. On June 20, 2016, Assistant City Attorney Shandler wrote a letter to Respondent's counsel stating the office "has not heard back from you regarding our May 13, 2016 letter."

77. The letter also asked for a status report on the Respondent's research on the original permit for the "tall tower."

78. On June 24, 2016, Respondent's counsel wrote to the City Attorney's office regarding the research to find the original building permit. The letter was silent about the City's May 13, 2016 letter.

79. On June 28, 2016, Respondent's counsel wrote to the City Attorney's office regarding the research to find the original building permit. The letter was silent about the City's May 13, 2016 letter.

9

80. Then, on July 6, 2016, a citizen called the City Attorney's Office to report that Respondent was installing a tower in the backyard.
81. The City's Inspection & Enforcement Division staff went to 1308 Apache Avenue.
82. The new tower had been erected.
83. The new tower did not have any antennae/equipment placed on it.
84. The existing "tall tower" and "small tower" were still on the roof with their antennae/equipment.
85. The new tower was approximately 80 feet high, but appeared placed approximately 20 feet from the property line of an adjacent residential house.
86. The City's Inspection & Enforcement Division staff asked Respondent's staff for a copy of a city issued building permit.
87. Respondent's staff said there was no building permit and just handed out the April 28, 2016 letter from Respondent's counsel.
88. Respondent told the City's Inspection & Enforcement Division staff that he was going to finish the work and the City could sue him if it wanted.
89. The City's Inspection & Enforcement Division staff went to City Hall to confer with the City Attorney's Office.
90. After conferring with the City Attorney's Office, the City's Inspection & Enforcement Division returned to 1308 Apache Avenue and posted a "red tag" to stop work at 1308 Apache Avenue.

Count II—Failure to Exhaust Appeal Remedies

91. An applicant for a building permit may appeal the Land Use Department's actions regarding a permit under City Code Section 14-3.17(C)(4)(a).

92. If an applicant does not like how the Land Use Department is handling an application, the applicant should ask for a written "final action" letter regarding the application.

93. It could be a "denial" letter or a final action letter.

94. The applicant can then appeal the handling of the application to the City's Board of Adjustment under City Code Section 14-3.2(C)(1).

95. Respondent has never asked for a written "final action" letter regarding this application.

96. Respondent has never tried to appeal the Land Use Department's actions to the Board of Adjustment.

Injunctive Relief Elements

97. Concurrent with this District Court filing, the City Inspection & Enforcement Division will send to Respondent a "Notice of Violation" under City Code Section 14-3.11 (requirement to have a building permit).

98. Respondent, under a Notice of Violation, has a thirty (30) days to cure the violation.

99. If not, City Inspection & Enforcement Division will issue a criminal citation against Respondent in Santa Fe Municipal Court.

100. While City may file a criminal citation in Santa Fe Municipal Court, that Court has no injunctive relief powers.

101. It may be up to forty-five (45) days until Respondent will face the Municipal Judge (during arraignment).

102. As a result, the City has no adequate remedy at law at this time to stop Respondent from continuing to build without a permit.

103. Because Respondent circumvented the building permit process, the Inspection & Enforcement Division staff has not had a chance to review the construction plans.

104. Because Respondent circumvented the building permit process, the Inspection & Enforcement Division staff has not had a chance to review the installation of the construction.

105. Because Respondent circumvented the building permit process, there is no building permit for the new tower.

106. Because Respondent circumvented the building permit process, there is immediate and irreparable injury, loss or damage will result to City and its residents.

107. On July 13, 2016, the City Manager received an email from a neighbor saying her house was in the fall zone and was very concerned about activities at 1308 Apache Avenue.

108. On July 14, 2016, the City Manager received an email from a neighbor saying Respondent had not stopped work; instead Respondent had put two antennae/equipment on the new tower. See Exhibit A.

109. Because Respondent circumvented the building permit process, there is an approximately 80 feet tower that could crash onto an adjacent neighbor's house because no city official knows about the quality/worthiness of the material, installation and construction.

110. Because Respondent circumvented the building permit process, the City has a substantial likelihood of prevailing on the merits at trial (i.e. whether Respondent built something without a permit required under Section 14-3.11) and a preliminary injunction against further such events should be entered pending the resolution of this cause.

111.  Because Respondent circumvented the building permit process adjacent to a residential neighborhood, this is a matter of importance to the public and the public is exposed to harm.

### Request for Relief

The City asks that the Court issue a temporary restraining order to Mr. Catanach his companies and order him: (a) to stop work and not to place/activate any further telecommunication antennae/equipment on the new tower pending resolution of this cause; (b) to immediately allow Inspection & Enforcement Division on his backyard property to visually observe whether the new tower is safe and take any steps ordered by the Building Inspector to make it safe and (c) inform the City Current Planning Division in writing in ten (10) days whether he wishes to proceed with the application process as set out by the City Current Planning Division or whether he wishes the Land Use Department to issue a final written decision and allow him to appeal the staff's actions to the City's Board of Adjustment.

RESPECTFULLY SUBMITTED:

KELLEY BRENNAN, CITY ATTORNEY
THE CITY OF SANTA FE
By: _____
Zachary Shandler
Assistant City Attorney
P.O. Box 909
Santa Fe, NM 87504-0909
(505) 955-6303
Zashandler@ci.santa-fe.nm.us

VERIFICATION

| | |
|---|---|
| State of New Mexico | ) |
| | ) |
| County of Santa Fe | ) |

BOBBY PADILLA, being duly sworn, deposes and says:

1. I am employed by the City of Santa Fe in Inspection & Enforcement Division, and I make this Affidavit on personal knowledge and on information made known to me as a Building Inspector for the City of Santa Fe.

2. I am commissioned to conduct code review and responsible for code enforcement for the City of Santa Fe and have been to the Property described in the Verified Complaint.

3. To the best of my knowledge and belief all statements regarding my role on July 6, 2016 contained in the Verified Complaint are true and correct.

4. I have not inspected the new telecommunication tower at 1308 Apache Avenue and cannot verify whether it is a safe structure.

_____
Bobby Padilla

**Subscribed and Sworn** to before me on this  14th  day of July 2016 by Bobby Padilla.

_____
Notary Public

My Commission Expires:
7-24-18

